UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.  0:13-CV-60349-ROSENBERG/BRANNON


PAUL STEPHENS,

      Plaintiff,

v.

BROWARD SHERIFF'S OFFICE and
NICK DEGIOVANNI,

      Defendants.

_____/


## ORDER DENYING DEFENDANT'S MOTION TO STRIKE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

      This matter is before the Court on Defendant Nick DeGiovanni's Motion for Summary Judgment as to Counts II–V [DE 101] and Defendant Nick DeGiovanni's Motion to Strike Plaintiff's Unauthorized Sur-Reply [DE 119]. The Motions have been fully briefed by both sides.  The Court has reviewed the documents in the case file and is fully advised in the premises.  A hearing was held on the Motions on December 5, 2014.

      The Court first denies Defendant Nick DeGiovanni's Motion to Strike Plaintiff's Unauthorized Sur-Reply [DE 119]. To the extent that the Plaintiff's affidavit, which was filed after (and is responsive to) the Defendant's reply to the Plaintiff's response to the Defendant's Motion for Summary Judgment, can be construed as an unauthorized sur-reply, the Court in its discretion will allow the affidavit and consider it as part of the record. For the reasons set forth below, Defendant

1

Nick DeGiovanni's Motion for Summary Judgment as to Counts II–V [DE 101] is granted, and the remaining state law claims (Counts I and VI) are dismissed without prejudice.

## I.      INTRODUCTION

The Plaintiff filed the instant suit under the Civil Rights Act, 42 U.S.C. § 1983 and 42 U.S.C. § 1981, additionally alleging common law tort claims (assault and battery), for damages resulting from the use of excessive force against the Plaintiff in the course of an unlawful seizure, and racial discrimination against the Plaintiff. DE 37 ¶ 1. Although the Plaintiff's Amended Complaint contains six counts, only Counts II through V, all of which are brought against Defendant DeGiovanni only, are before the Court on the Defendant's Motion for Summary Judgment. DE 101 at 1. Count I, for assault and battery against the Broward Sheriff's Office, and Count VI, for assault and battery against Defendant DeGiovanni (pled in the alternative to Count I) are not before the Court.

## II.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment as a matter of law is merited when, after "adequate time for discovery," the nonmoving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The standard for granting summary judgment "mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Court is required "to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)). Where the parties' versions of events differ in significant respects, that means adopting the nonmoving party's version of the facts. *See id.*

Here, there is no question that a genuine dispute exists as to material facts. As just one example, the parties present very different pictures of the plaintiff's injuries. The Defendant's expert opines, in part, that "[t]he findings made in all the imaging studies of the cervical spine and neck of Paul Stephens were pre-existing conditions that were not caused by the incident," and "[t]he imaging studies of the cervical spine show no evidence of herniation," while the Plaintiff's expert attributes "a cervical sprain/strain with multilevel disc herniations and resultant foraminal stenosis" to the incident. DE 101 Ex. 5 at 6; DE 100 Ex. 1 at 9. For purposes of determining whether the Defendant is entitled to judgment as a matter of law, then, the Court must accept the Plaintiff's version of events as true where a genuine dispute exists as to material facts.[1]

---

[1] The Defendant argues in his Reply that Stephens's affidavit and that of his cousin, Roan Greenwood, should both be discounted as shams. *See* DE 116 at 1–5. "[W]hen a party has given clear answers to unambiguous questions which negate the existence of any issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Santhuff v. Seitz*, 385 F. App'x 939, 944 (11th Cir. 2010) (per curiam) (quoting *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). Where an affidavit flatly contradicts prior testimony, a court may disregard the offending affidavit as a sham. *See id.*; *see also Tippens v. Celotex Corp.*, 805 F.2d 949, 953–54 (11th Cir. 1986) (citing *Van T. Junkins*, in which an affidavit stating that an agreement was conditional was disregarded as a sham because the affiant previously "made crystal clear in three places in the deposition" that no condition was attached to the agreement). District courts do not abuse their discretion, however, in determining that inconsistencies between an affidavit and prior deposition testimony are "more appropriately considered 'variations of testimony' or 'instances of failed memory' going to the weight and credibility of the evidence, as opposed to falsehoods rendering the affidavit a disregardable 'sham.'" *Croom v. Balkwill*, 645 F.3d 1240, 1253 n.18 (11th Cir. 2011) (per curiam).

The Defendant points to two instances in Stephens's prior deposition testimony that he believes flatly contradict the affidavit submitted by Stephens in support of his Response to the Defendant's Motion for Summary Judgment. First, the Defendant claims that Stephens's affidavit contradicts portions of his deposition testimony because in the affidavit

### III.   PLAINTIFF'S ACCOUNT OF THE FACTS

On February 16, 2009, Plaintiff Paul Stephens and his cousin, Roan Greenwood, were in the parking lot of the Shoppes of St. Croix, a mixed-use business and residential complex, where they were working on a car belonging to Stephens's girlfriend.[2] DE 109 Ex. 1 ¶¶ 2–3. Both men were there on the invitation of Claudia White, who lived at 4001 NW 34th Street, Apt. 205, Fort Lauderdale, Florida 33319, which was on the second floor of the Shoppes. *Id.* ¶ 2. The men were examining the car because the "check engine" light had come on. *Id.* ¶ 3. The car was off and parked in a space that was not designated "Retail Parking Only." *Id.* ¶ 3; *see also* DE 111 Ex. 1 ¶ 3. The key was not in the ignition. DE 111 Ex. 1 ¶ 3. The driver's car door was open and Stephens was on the driver's side of the car, sitting on the metal frame of the driver's door doorway, with both feet outside of the vehicle and on the ground. DE 109 Ex. 1 ¶ 3. Greenwood was sitting in the passenger seat. *Id.* At "some point" during Stephens's examination of the car, but before the Defendant drove by, Stephens

---

Stephens stated that the car was off, but in the deposition he stated that the ignition had to be on for the scanner he was using to diagnose the "check engine" light problem to work. *See id.* at 2. However, a contradiction in testimony only justifies disregarding an affidavit where the contradiction is "without explanation," and Stephens has provided one: in his second affidavit, he explains that while he had used the scanner on the car, he was using it *before* DeGiovanni drove up. DE 118 Ex. 1 ¶ 3. That statement reconciles Stephens's deposition testimony with his first affidavit.

Second, the Defendant argues that the affidavit should be disregarded as a sham because in Stephens's affidavit, he stated that there was not a "Retail Parking Only" sign in front of the parking space in which the Camry was parked; in his deposition, however, Stephens stated (after a lengthy discussion) that he could not remember whether the space the car was parked in was designated "Retail Only Parking" on the night of the incident, and that the location of the signs had changed over time. *See id.* at 2–4. The Court recognizes that this is a closer question. However, the Court believes that the Plaintiff's prior testimony, when taken in conjunction with his subsequent affidavits, does not rise to the level of discrepancy required to qualify the affidavit as a sham. Rather, it is more appropriately an issue of credibility for a jury to decide. Because the Defendant only argues that Roan Greenwood's affidavit should be disregarded as a sham to the extent that it mimics the Plaintiff's, and the Court has found the Plaintiff's affidavit does not constitute a sham, that affidavit will not be disregarded either.

Ultimately, the issue is irrelevant, as the case will not proceed to a jury; for the reasons stated above, even accepting the Plaintiff's facts (including the challenged affidavit) as true, the Court has found that the Defendant is entitled to summary judgment on the federal claims.

[2] The Plaintiff submitted affidavits by Paul Stephens and Roan Greenwood, relying on both. Because their affidavits describe essentially the same series of events, the Court largely cites to the Stephens Affidavit (DE 109), citing the Greenwood Affidavit (DE 111) only when it differs in some material way or is particularly relevant.

employed a scanner to determine what was wrong with the car. DE 118 Ex. 1 ¶ 3. While he was using the scanner, the ignition of the car was on but the engine was off. *See id.*

Defendant Nick DeGiovanni was employed as a Deputy Sheriff by the Broward County Sheriff's Office. DE 101 Ex. ¶ 2. On February 16, 2009, at 8:15 P.M., he was on road patrol assigned to Lauderdale Lakes. *Id.* at ¶¶ 2–3, 5. He was patrolling in Lauderdale Lakes when he saw a 1997 gray Toyota Camry with Florida license plate #U54-0RT parked in front of closed businesses at the Shoppes of St. Croix. *Id.* ¶ 3. Because DeGiovanni was aware of recent burglaries in the area, and it was late in the day (all of the businesses in the Shoppes were closed), he decided to investigate. *Id.* ¶ 5.

According to Stephens, DeGiovanni drove past the Camry, reversed his car, parked it immediately behind the Camry, and exited the car to approach Stephens while he (Stephens) remained seated. DE 109 Ex. 1 ¶ 4. DeGiovanni asked, "What are you two doing over here?" Stephens responded that he and Greenwood were chatting, at which point DeGiovanni said, "You two are not supposed to be over here." *Id.* Stephens explained that White lived in the Shoppes and that he and Greenwood were her guests, facts which Greenwood verbally confirmed. *Id.* To prove this to DeGiovanni, Greenwood used the key White had given them to unlock the door on the first floor that led to White's second-floor apartment. DE 111 Ex. 1 ¶ 4.

DeGiovanni then turned away from Stephens and Greenwood, returning to his patrol car. DE 109 Ex. 1 ¶ 5. As he reached the front of the patrol car, "one or two" other police cars turned into the Shoppes, driving in their direction.[3] *Id.* At that point, DeGiovanni turned around and returned to the

---

[3] The Court accepts the Plaintiff's statement that one of the two officers who ultimately arrived on the scene, Kevin Abrams, did not walk over to where Stephens was standing until after he was already handcuffed, and that the other officer, Brian O'Donoghue, did not arrive until Stephens was already in the backseat of DeGiovanni's police car. DE 118 Ex. 1 ¶¶ 5–10. Accordingly, the Court does not consider their statements (attached to the Defendant's Reply) as

Camry, asking Stephens for identification, but not his driver's license. *Id.* Stephens stood up to give DeGiovanni his identification and while standing asked, "What is the problem?" *Id.* DeGiovanni did not answer the question, but instead said, "Give me your ID." *Id.* Stephens gave DeGiovanni his State of Florida identification card as requested. *Id.* DeGiovanni never asked for his driver's license. *Id.*

Stephens's cell phone then rang, and he answered it using the Bluetooth device on his ear. *Id.* ¶ 6. DeGiovanni slapped the Bluetooth from his ear and said, "Who told you to answer that phone?" *Id.* Stephens then asked DeGiovanni for a field supervisor to be present, and DeGiovanni responded by stating, "Shut your damn mouth." *Id.* DeGiovanni then "forcefully" shoved Stephens in his chest, causing him to fall backwards and land in the driver's seat. *Id.* Stephens stood up and asked DeGiovanni, "Why are you doing this?" *Id.* DeGiovanni "forcefully" shoved Stephens a second time, and Stephens said, "The kids are upstairs looking at you. What kind of example are you setting for the kids?" *Id.*

DeGiovanni then stepped on Stephens's left foot while simultaneously "forcefully" grabbing him (Stephens) by the neck and "forcefully" shoving him backwards, this time causing Stephens to fall in the space between the open driver's door and the car. *Id.* ¶ 7. Stephens's head and neck struck the car. *Id.* Stephens then reached up with his right hand to grab the car door and lift himself, and DeGiovanni grabbed his right hand, twisting it so that the palm faced up. *Id.* DeGiovanni forced the last three fingers of Stephens's right hand back towards his (Stephens's) forearm, causing all of Stephens's body weight to be placed on those three fingers. *Id.*

After Stephens was standing, and while DeGiovanni still had Stephens's fingers bent backwards, DeGiovanni told Stephens to turn around and handcuffed him. *Id.* ¶ 8.  The handcuffs were "very" tight on Stephens, causing him to lose the feeling in his hands. *Id.* He asked DeGiovanni

---

particularly relevant to the Plaintiff's narrative, and thus does not discuss them.

to loosen the handcuffs because they were too tight and he was losing feeling in his hands, but DeGiovanni simply said, "You people come here and think you can do as you please." *Id.* Greenwood told DeGiovanni that the two had done nothing wrong, but DeGiovanni told him (Greenwood) to stay back or he would be arrested, too. DE 111 Ex. 1 ¶ 8. DeGiovanni did not adjust Stephens's handcuffs until almost three hours later. DE 109 Ex. 1 ¶ 8. At no point during the encounter did Stephens raise his voice, say anything threatening, or make any threatening gestures. *Id.* ¶ 11.

Stephens was then taken to the police station. *Id.* ¶ 9. He was denied use of a bathroom. *Id.* In Stephens's presence, DeGiovanni prepared a report on the incident. *Id.* Another deputy looked over the report and told DeGiovanni, "That report's not gonna stick," at which point DeGiovanni re-wrote his report. *Id.* DeGiovanni then took Stephens to the jail, but the jail staff refused to book Stephens due to his injuries; Stephens was then taken to Broward General Medical Center. *Id.* Stephens states that the hospital staff began treating him differently after learning that his injuries occurred at the hands of a Broward Sheriff's Office deputy. *Id.*

Stephens was ultimately issued a citation for violation of Florida Statute section 322.03(1), and pled "No Contest with a Withhold of Adjudication." DE 101 Ex. 1 ¶ 10; *see also* DE 37 ¶ 23.[4] Stephens pled no contest to the violation of Florida Statute section 322.03(1), even though he possessed a driver's license issued in Jamaica at the time, in order to attend a funeral in Jamaica. *See* DE 109 Ex. 1 ¶ 14.

As a result of the incident, Stephens was, and continues to be, humiliated and embarrassed; he has experienced, and continues to experience, emotional distress and reputational damage. *Id.* ¶ 12. Additionally, DeGiovanni caused Stephens to experience ongoing "physical injuries, pain and

---

[4] The fact of Stephens's plea is not explicitly outlined in the affidavits, but it is alleged in the Complaint. At the hearing of December 5, 2014, the parties were in agreement that this fact is not contested.

7

suffering including, among other things headaches, back pain, and loss of sensation in [his] right hand." *Id.* ¶ 13. Stephens attributes these injuries to the following conduct by DeGiovanni: the third shove, which caused Stephens to strike the back of his head and his neck on the car; the twisting of Stephens's hand; and leaving him (Stephens) handcuffed too tightly for approximately three hours. *Id.* Stephens also states that prior to his encounter with DeGiovanni, he did not have a lump on his neck. *Id.* ¶ 9. Dr. Barry Schapiro, a board-certified orthopedic physician, has additionally examined Stephens and reviewed his available medical records concerning the February 16, 2009 incident, and has diagnosed Stephens with "a cervical sprain/strain with multilevel disc herniations and resultant foraminal stenosis[,] . . . a left shoulder partial thickness articular-sided rotator cuff tear involving the infraspinatus tendon . . . [and] a sprain of the right wrist" as a result of the February 16, 2009 incident. DE 100 Ex. 1 at 9.[5] Dr. Schapiro stated that the left posterior neck lipoma was likely not related to the incident.[6] *Id.*

---

[5] Dr. Schapiro's report also noted, "Further electrodiagnostic workup is required to evaluate the radiating pain and little finger numbness to differentiate cervical radiculitis/radiculopathy and a peripheral nerve injury in the right upper extremity." *Id.* Because Dr. Schapiro did not conduct these additional tests, the Court does not consider their possible results in making its decision. *See* DE 114 (allowing the Plaintiff's late disclosure of Dr. Schapiro and his expert report as it was).

[6] The Defendant argues in his reply that "Plaintiff has cited to Dr. Schapiro's Report, yet Plaintiff has not filed any verified report in opposition to summary judgment which can be considered as record evidence." No support is cited for this proposition. It is true that the Plaintiff has not filed a verified expert report from Dr. Schapiro, although Dr. Schapiro's report (such as it was) was attached to the Defendant's motion to strike that report. Federal Rule of Civil Procedure 56(c)(2) states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." There is no dispute that the facts contained within the expert report could be reduced to admissible evidence at trial (presumably, the expert would testify), and Rule 56(c)(2) states that objection is proper only when the facts *cannot* be presented in an admissible form. *See Crouch v. Teledyne Cont'l Motors, Inc.*, No. CIV.A. 10-00072-KD-N, 2011 WL 1539854, at *1 n.3 (S.D. Ala. Apr. 21, 2011) (noting, where unsworn expert reports were challenged on a motion for summary judgment, that the objecting party "does not argue that the expert reports 'cannot be presented in a form that would be admissible in evidence,'" because the objecting party's only argument was that the reports were unsworn, and citing *Macuba v. Deboer*, 193 F.3d 1316, 1323 (11th Cir. 1999) for the proposition that district courts can rely on evidence which can be "reduced to admissible evidence at trial and reduced to admissible form").

Because both of the Plaintiff's experts, Dr. Seong Lee and Dr. Barry Schapiro, indicate that the lipoma was not the result of the February 16, 2009 incident,[7] the Court holds that on this point there is no *genuine* issue of material fact, and thus does not consider the lipoma among the Plaintiff's injuries. *See Anderson*, 477 U.S. at 247–48.

## IV.    ANALYSIS

The Defendant seeks judgment as a matter of law on all of the federal counts, Counts II through V. The Defendant raises different issues on each count, but he has asserted qualified immunity as a defense to all. *See* DE 43 ¶ 59; DE 101. Each count is discussed in turn. The status of the Plaintiff's state law claims in Counts I and VI is discussed at the end of this section.

### A.    *Count II: 42 U.S.C. § 1983 (Excessive Force).*

In Count II, the Plaintiff claims that the Defendant used excessive force during the course of his (the Plaintiff's) unlawful arrest in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments. DE 37 ¶¶ 31–32. The Defendant makes two arguments in response: that he is entitled to qualified immunity; and that any force used was *de minimis*, and cannot support an excessive force claim. Following *Nolin v. Isbell*, 207 F.3d 1253 (11th Cir. 2000), and its progeny, the Court considers the *de minimis* argument in the context of the Defendant's qualified immunity claim.

"In order to receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks omitted). "[A] government official proves that he acted within his discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of

---

[7] Dr. Seong Lee testified that lipomas are slow-forming, and the lipoma on the Plaintiff's neck could not have been caused by any contact or force used by the Defendant. *See* DE 94 Ex. 2; DE 101 Ex. 4 at 10:3–22. Dr. Schapiro's opinion regarding the lipoma is discussed above.

his duties and within the scope of his authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal quotation marks omitted).

Once the defendant has established that he was acting in his discretionary capacity, the burden shifts to the plaintiff. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009) (per curiam). "One inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. If the facts, construed . . . in the light most favorable to the plaintiff, show that a constitutional right has been violated, another inquiry is whether the right violated was 'clearly established.'" *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010) (internal citations omitted). For an official to lose qualified immunity, the plaintiff must show both that a constitutional violation occurred, *and* that the violation was of a clearly established right. *See id.* "[T]his two-pronged analysis may be done in whatever order is deemed most appropriate for the case." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223 (2009)).

i.       Defendant DeGiovanni Was Acting Within His Discretionary Authority.

Here, there is no real question that Defendant DeGiovanni was acting within his discretionary authority, and the Plaintiff has conceded as much. *See* DE 110 at 6 (conceding, in his Response, that "Deputy DeGiovanni was acting within the scope of his discretionary authority"). Defendant DeGiovanni was patrolling the Lauderdale Lakes area, to which he was assigned, on the night in question when he noticed the Plaintiff's car in the Shoppes of St. Croix parking lot. DE 101 Ex. 1 ¶¶ 2–3, 5. Because Defendant DeGiovanni was acting within his discretionary authority, the qualified immunity inquiry is triggered.

ii.     No Constitutional Violation Occurred, Because the Force Used by the Defendant Was *De Minimis*.

An encounter involving only *de minimis* force is "insufficient, as a matter of law, to state a constitutional violation." *Bryan v. Spillman*, 217 F. App'x 882, 886 (11th Cir. 2007) (per curiam); *see also Nolin*, 207 F.3d at 1257 (affirming that the Eleventh Circuit's *de minimis* case law remains valid post-*Graham*, and holding that "the application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment"). This is because courts have "long recognized" that under the Fourth Amendment, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Lee*, 284 F.3d at 1197 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted). Courts are to consider whether the officer's "actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397 (internal quotation marks omitted).

In determining whether the force used was *de minimis*, courts have considered both the amount of force used by the defendant and the extent of the injuries suffered by the plaintiff. *See Nolin*, 207 F.3d at 1258 ("[A] minimal amount of force *and* injury . . . will not defeat an officer's qualified immunity in an excessive force case." (emphasis added)). However, courts have largely emphasized the "force" component of the injury. *See, e.g.*, *Woodruff v. City of Trussville*, 434 F. App'x 852 (11th Cir. 2011) (per curiam) (finding the force used to be *de minimis*, but omitting any discussion of the plaintiff's injuries); *see also J.B. ex rel. Brown v. Amerson*, 519 F. App'x 613, 618 (11th Cir. 2013) (per curiam) (holding that "the *de minimis* nature of a plaintiff's injury does not

foreclose the possibility of his entitlement to relief"); *Lee*, 284 F.3d at 1200 (holding that "reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time" (internal quotation marks omitted)). This Court thus considers the Plaintiff's injuries primarily to the extent they inform the Court as to the force used by the Defendant during the course of the encounter.

Courts have held that an officer's use of force was *de minimis* in a variety of situations. *See, e.g.*, *Woodruff*, 434 F. App'x at 853 (defendant officer punched plaintiff in the face, pulled him from his car, threw him to the pavement, causing him to strike his head, and handcuffed him); *Croom*, 645 F.3d at 1251–53 (11th Cir. 2011) (defendant officer forced an unarmed, physically weak, elderly woman to the ground and held her there with a foot or knee on her back for ten minutes); *Durruthy v. Pastor*, 351 F.3d 1080, 1085 (11th Cir. 2003) (defendant officer grabbed plaintiff from behind and, with another officer, pulled plaintiff onto the ground while struggling to pin his arms behind him and handcuff him; during the struggle, the other officer also kneed plaintiff in the back); *Nolin*, 207 F.3d at 1255 (defendant officer grabbed plaintiff and "threw" him against a van a few feet away, kneed plaintiff in the back, pushed plaintiff's head against the van, and handcuffed him); *Jones v. City of Dothan*, 121 F.3d 1456, 1458 (11th Cir. 1997) (per curiam) (defendant officer slammed plaintiff against the wall, kicked his legs apart and required plaintiff to raise his hands above his head during arrest); *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1556 (11th Cir. 1993) (defendant officer applied a chokehold, handcuffed plaintiff, then pushed plaintiff against wall while handcuffed). In cases where the Court has found the use of force was not *de minimis*, often the plaintiff was already restrained when force was used. *See, e.g.*, *Lee*, 284 F.3d at 1198–99, 1200 (finding force used was not

*de minimis* under such circumstances, and discussing similar cases along the lines of *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000)).

Here, the Court finds that any force used by Defendant DeGiovanni was *de minimis*. According to the Plaintiff's own account of events, the Defendant slapped the Bluetooth device from the Plaintiff's ear at the start of the encounter, and then "forcefully" shoved the Plaintiff a total of three times. The Plaintiff fell backwards into the driver's seat the first time, but apparently was not injured until the third shove (which the Defendant executed after stepping on the Plaintiff's foot, and while "forcefully" grabbing him by the neck), when the Plaintiff fell in the space between the open driver's door and the car, striking his head and neck on the car. When the Plaintiff reached up to grab the car door, the Defendant twisted the Plaintiff's hand back and forced his (the Plaintiff's) weight onto the last three fingers of his hand. The Defendant then handcuffed the Plaintiff, causing the Plaintiff to lose the feeling in his hands, and the Defendant did not adjust the handcuffs for almost three hours.

The facts in this case are highly similar to facts in cases like *Woodruff* and *Jones*, and unlike in the *Slicker* line of cases, the Plaintiff was not already restrained when the Defendant used force against him. Although the Defendant did not loosen the Plaintiff's handcuffs immediately, it is uncontested that his use of force ceased after he put the handcuffs on the Plaintiff, and the force used by the Defendant prior to that point was *de minimis* under the facts of the cases cited above. Because the Court has concluded that no constitutional violation occurred, due to the *de minimis* nature of the force used by the Defendant, the Defendant's Motion for Summary Judgment is granted as to Count II.

   iii. Alternatively, If a Constitutional Violation Occurred, It Was Not a Violation of a Clearly Established Right.

Even if this Court were to find that a constitutional violation occurred, it still would fail to qualify as a violation of a clearly established right.[8] Once it has been determined that a constitutional violation occurred, courts then must "determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.'" *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006) (quoting *Garrett v. Athens-Clarke Cnty.*, 378 F.3d 1274, 1278–79 (11th Cir. 2004) (per curiam)).

It is not necessary that the very action in question have been previously held unlawful; rather, "in the light of pre-existing law the unlawfulness must be apparent." *Davis*, 451 F.3d at 762 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Where there is not "controlling and factually similar" case law, however, a plaintiff may still overcome qualified immunity "by showing that the official's conduct lies so obviously at the very core of what the Fourth Amendment prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw." *Smith v. Mattox*, 127 F.3d 1416, 1419 (11th Cir. 1997) (per curiam). "Under this test, the law is clearly established, and qualified immunity can be overcome, only if the standards set forth in *Graham* and our own case law 'inevitably lead every reasonable officer in [the defendant's] position to conclude the force was unlawful.'" *Lee*, 284 F.3d at 1199 (quoting *Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 927 (11th Cir. 2000)). The factors a court considers under *Graham* include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

---

[8] There is no doubt, of course, that the use of excessive force in the context of an arrest constitutes the violation of a clearly established constitutional right. The question, however, is whether the Defendant's use of force under these circumstances was clearly established as excessive by controlling and factually similar case law.

officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

As discussed above, the Court believes that "controlling and factually similar" case law supports the *lawfulness* of the Defendant's conduct. Admittedly, none of the cases are factually identical, and perhaps that is to be expected in the context of excessive-force claims, which are highly fact-specific. *See Lee*, 284 F.3d at 1198–99 ("[I]dentifying factually similar cases may be difficult in the excessive force context."). As the parties have pointed to no factually identical case, and the Court has been unable to find such a case on its own initiative, the Court also considers whether the Defendant's conduct was "so obviously at the very core of what the Fourth Amendment prohibits" that it justifies finding that a clearly established constitutional right was violated.

The Court finds that the Defendant's conduct was not so egregious. The Defendant shoved the Plaintiff several times, slapped his Bluetooth from his ear, twisted his arm behind his back, and put pressure on his fingers; this is the kind of force an officer might expect to use during the course of an arrest. Although the crime for which the Plaintiff was arrested was not a severe one, and the Plaintiff had answered the Defendant's questions and provided him with his identification card as requested when the Defendant slapped the Bluetooth from his ear, *see* DE 109 Ex. 1 ¶¶ 4–6, the Plaintiff subsequently took actions that an officer in the Defendant's position could reasonably have interpreted as evidence that his compliance was at an end. Standing after the Defendant pushed him down into his seat, for example, could be interpreted as a prelude to resistance. *Cf. Post*, 7 F.3d at 1556, 1559 (concluding that the defendant was entitled to qualified immunity because, *inter alia*, the plaintiff raised his hands without having been told to do so (according to the plaintiff, he did so in order to be handcuffed), and "a reasonable officer in [the defendant]'s place could have concluded

15

that the [chokehold the defendant] used was needed to stop [the plaintiff] from becoming violent"). In light of this action, the Defendant may have felt threatened. Yet, whether or not a reasonable officer in the Defendant's position would have felt threatened, it seems clear that the Defendant's conduct was not so outrageous that *every* reasonable officer in the Defendant's position would inevitably conclude that the force used was unlawful. *See Lee*, 284 F.3d at 1199. If a constitutional violation occurred, the Defendant is nonetheless entitled to summary judgment for this separate reason, and the Defendant's Motion for Summary Judgment is granted as to Count II for that reason in the alternative.

  B.  *Count III: 42 U.S.C. § 1983 (Unlawful Seizure).*

  The Plaintiff also alleges violations of 42 U.S.C. § 1983 based on his unlawful seizure by the Defendant. *See* DE 37 ¶¶ 33–35.[9] It is slightly unclear from the face of the Complaint whether the seizure was the arrest itself. *See id.* ¶ 33 (alleging that "without probable cause to believe that STEPHENS had committed any crime, DeGIOVANNI seized him and caused him to be restrained and deprived of his liberty"). However, the Plaintiff's Response to the Defendant's Motion for Summary Judgment clarifies that it was, in fact, the arrest to which the seizure claim refers. *See* DE 110 at 6 ("Under the Fourth Amendment, STEPHENS had a right to be free from unreasonable searches and seizures, and Deputy DeGiovanni's arrest of STEPHENS constituted a seizure of STEPHENS."). Because no seizure other than the arrest has been alleged, the Court interprets the Plaintiff's § 1983 unlawful seizure claim as a § 1983 false arrest claim.

  Southern District of Florida courts have held that where a § 1983 claim is predicated upon a false arrest, a conviction for the offense of arrest will be considered conclusive proof of probable

---

[9] In his Motion for Summary Judgment, the Defendant made the following request: "[I]f the Court does not grant summary judgment on the entirety of Count III, Deputy DeGiovanni asks for summary judgment on Paragraph 34 or for the paragraph to be stricken." DE 101 at 11. Because the Court does grant summary judgment on the entirety of Count III, it need not address this issue.

cause and defeat the claim.[10] *See Epstein v. Toys-R-Us Del., Inc.*, 277 F. Supp. 2d 1266, 1275–76 (S.D. Fla. 2003), *aff'd sub nom. Epstein v. Toys-R-Us Del.*, 116 F. App'x 241 (11th Cir. 2004) (finding that the plaintiff's conviction established probable cause, and holding that "to the extent that Count I, Plaintiff's Section 1983 claim, is predicated on a claim of false arrest, the Officer Defendants are . . . entitled to summary judgment with respect to Count I"); *see also Cameron v. Fogarty*, 806 F.2d 380, 388–89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.").[11]

Courts holding that a conviction is dispositive have relied in part on state law, as "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Barts v. Joyner*, 865 F.2d 1187, 1194 & n.5 (11th Cir. 1989) (citing *Migra* in the context of a § 1983 claim where unlawful seizure was argued). Under Florida law, "a trial in a court of competent jurisdiction, which results in a judgment of conviction, or verdict for plaintiff, is a sufficient legal determination of the existence of probable cause . . . [unless] it be shown that the judgment was obtained by fraud, perjury, or other corrupt means." *Goldstein v. Sabella*, 88 So. 2d 910, 911–12 (Fla. 1956). A "no contest" plea constitutes a conviction, even where adjudication of guilt has been withheld. *Behm v. Campbell*, 925 So. 2d 1070, 1072 (Fla. Dist. Ct. App. 2006).

---

[10] For the reasons stated in the Court's prior Order of November 21, 2013, the Court does not find the claim to be barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See* DE 30 at 10–13.
[11] The Plaintiff cited to *Colosimo v. City of Port Orange*, No. 604CV1491ORL31DAB, 2005 WL 1421294, at *5 (M.D. Fla. June 16, 2005) as an example of a case holding that a conviction was *not* dispositive of the issue. However, *Colosimo* is a Middle District case, and *Epstein* is within our own District and carries the additional persuasive weight of an Eleventh Circuit affirmance.

Here, it is uncontested that the Plaintiff pled no contest to the offense of arrest, Florida Statute section 322.03(1). *See* DE 109 Ex. 1 ¶ 14; DE 101 Ex. 1 ¶ 10; *see also* DE 37 ¶ 23. Under Florida law that no contest plea constitutes a conviction, unless the Plaintiff can show "that the judgment was obtained by fraud, perjury, or other corrupt means." *Goldstein*, 88 So. 2d at 912. The Plaintiff did not address this issue in his Response, and when the Court asked the Plaintiff's counsel about it at the hearing of December 5, 2014, he argued that the corrupt nature of the arrest effectively tainted the plea. However, the question under *Goldstein* is whether the *judgment* was obtained by corrupt means, not the arrest. The Plaintiff has presented no evidence that he was coerced into taking the plea, that fraud caused him to accept the plea, or that the plea was otherwise defective.[12] By the Plaintiff's own admission, he took the plea in order to attend a funeral in Jamaica. DE 109 Ex. 1 ¶ 14. Accordingly, the conviction stands and the Court holds that probable cause has been conclusively established, defeating the Plaintiff's § 1983 claim for unlawful seizure.[13] The Defendant's Motion for Summary Judgment is granted as to Count III.

C.      *Count IV: 42 U.S.C. § 1983 (Equal Protection), and Count V: 42 U.S.C. § 1981.*

The Plaintiff also has brought an Equal Protection claim under 42 U.S.C. § 1983 and the Fourteenth Amendment (Count IV), and a claim of racial discrimination under 42 U.S.C. § 1981 (Count V). *See* DE 37 ¶¶ 36–38, 39–42. At the hearing of December 5, 2014, the Court asked the Plaintiff's counsel whether the Equal Protection claim was a "class of one" claim, and he agreed that it was. However, the Amended Complaint directly alleges racial discrimination. *See* DE 37 ¶ 37

---

[12] The Court also points to its prior order of November 21, 2013, in which it stated, "Although Stephens urges that he accepted the plea only so that he could travel to Jamaica in time for his cousin's funeral, these circumstances do not suggest that the prosecuting authority was involved in any improper conduct. Nor has Stephens averred facts that would allow the Court to conclude that the Florida court acted improperly in accepting Stephens's plea." DE 30 at 9–10. The Plaintiff has not come forward with any new evidence on this point since that Order was entered.

[13] Because the Court finds the conviction issue dispositive, the issue of whether probable cause, actual or arguable, existed is not discussed.

("DeGIOVANNI intentionally took the aforesaid discriminatory actions against STEPHENS because STEPHENS is of the Black race and/or of Jamaican national origin, and DeGIOVANNI therefore infringed on Plaintiff's equal rights under the 1aw in violation of 42 U.S.C. § 1983."). Moreover, the Plaintiff's Response to the Defendant's Motion for Summary Judgment considers the case solely as a selective enforcement claim. *See* DE 110 at 16 ("The Equal Protection Clause of the Fourteenth Amendment 'prohibits selective enforcement of the law based on considerations such as race.'"). In an abundance of caution, the Court first considers Count IV as a selective enforcement claim, and then as a class-of-one claim.

First, the Court considers whether the Plaintiff has brought forth sufficient facts to support a claim of selective enforcement based on the Plaintiff's race or national origin. The Equal Protection Clause of the Fourteenth Amendment "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). To prevail on a selective enforcement claim alleging discrimination based on race or national origin, a plaintiff must present evidence that individuals of a different race or national origin from the plaintiff could have been, but were not, subjected to the same treatment. *See Swint v. City of Wadley, Ala.*, 51 F.3d 988, 1000 (11th Cir. 1995) ("Absent some evidence of racially disproportionate arrests compared to the actual incidence of violations by race, there is no basis for inferring racially selective law enforcement."); *see also Urbanique Prod. v. City of Montgomery*, 428 F. Supp. 2d 1193, 1224 (M.D. Ala. 2006) ("To prevail on their selective enforcement claim, Plaintiffs must present evidence that individuals of a different race could have been subjected to a search of their premises and/or arrested for the same crime, but were not."). Proof of discriminatory motive is required. *See Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991) (per curiam).

The Court finds that the Plaintiff has not brought forth sufficient evidence in support of a selective enforcement claim to survive summary judgment. Specifically, the Plaintiff has failed to provide any evidence that individuals of a different race or national origin were treated differently than he was by law enforcement. The only evidence cited by the Plaintiff in support of his Equal Protection claim, as acknowledged by the Plaintiff at the hearing, is the Defendant's statement, "You people come here and think you can do as you please," which the Defendant made to the Plaintiff after he handcuffed him.[14] DE 109 Ex. 1 ¶ 8. This is insufficient as a matter of law to state a constitutional violation. First, the phrase "[y]ou people" could easily refer to, e.g., criminals, as opposed to black people or people of Jamaican national origin like the Plaintiff. But even if this Court reads "[y]ou people" to refer to members of those groups, this statement alone does not provide support for the proposition that individuals of other races were treated differently than the Plaintiff.

The Plaintiff has argued that the statement alone is sufficient evidence for his claim to survive summary judgment, citing *Swint*. *Swint* does not support that proposition, however. First, there was more than a single statement at issue in *Swint*; there was also deposition testimony reflecting the fact that "the black-owned Club was the only one raided in his twenty-one years as sheriff," and there was "evidence of a higher incidence of DUI offenses for blacks than whites in the vicinity of the Club." *Swint*, 51 F.3d at 1000. Second, the statement in *Swint* was "regarding the intention to close the Club down because of the race of the owners and patrons." *Id.* Unlike the statement at issue here, the statement in *Swint* regarded law enforcement's explicit intent to treat a business differently based on

---

[14] If the Court had determined that the Defendant arrested the Plaintiff without arguable or actual probable cause, that could conceivably support the Plaintiff's claim that the Defendant's arrest of the Plaintiff was motivated by his (the Plaintiff's) race or national origin, as opposed to other legitimate factors. However, because the Court has concluded, for the reasons discussed *supra*, that there was probable cause for the arrest, the Court does not consider the alleged unlawfulness of the arrest as a factor. Even if the Court were to consider the alleged unlawfulness of the arrest as a factor, however, the Plaintiff's claim still fails because, *inter alia*, the Plaintiff has failed to cite a single instance in which an individual of a different race or national origin from the Plaintiff was treated differently under similar circumstances.

the race of its owners and patrons. Even assuming the statement in *Swint* were sufficient grounds to deny the officers qualified immunity, that statement is very different from the one at issue in this case. The Defendant's statement, taken alone, is insufficient evidence to support a claim of selective enforcement.

Count V, which alleges violations of 42 U.S.C. § 1981, fails for the same reasons as the selective enforcement claim. The Eleventh Circuit has held that § 1983 racial discrimination claims and claims brought under § 1981 are effectively merged when the defendant is a state actor, because § 1983 is the exclusive federal damages remedy for such claims. *See Busby*, 931 F.2d at 771 n.6; *see also Crenshaw v. City of Defuniak Springs*, 891 F. Supp. 1548, 1552–56 (N.D. Fla. 1995) (finding that where defendants were entitled to summary judgment on plaintiff's § 1983 services-discrimination and selective enforcement claims, they were accordingly entitled to summary judgment on plaintiff's § 1981 claim). The Court can thus consider these claims together, under the rubric of a § 1983 Equal Protection claim alleging racial discrimination. Because the selective enforcement claim fails, so does the § 1981 claim. Accordingly, the Court grants summary judgment in the Defendant's favor as to Count V.

Second, the Court considers whether the Plaintiff has put forth sufficient evidence to support a "class of one" equal protection claim. "[A] 'class of one' claim involves a plaintiff who 'alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1202 (11th Cir. 2007) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Court finds that any "class of one" claim fails for the simple reason that the Plaintiff has failed to identify any similarly situated individual who was treated differently from the Plaintiff.

21

Because the Plaintiff "has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," *see Celotex Corp.*, 477 U.S. at 322–23, he has not shown that he was discriminated against as a "class of one." The Court thus finds that under either a selective enforcement or "class of one" theory, the Plaintiff has failed to come forth with sufficient evidence to support a constitutional violation of § 1983 (and, consequently, § 1981).[15] The Defendant is entitled to qualified immunity on both claims, and the Defendant's Motion for Summary Judgment is granted as to Counts IV and V.

       *D.*      *Counts I and VI: State Law Claims*

The Court has original jurisdiction in this case over the Plaintiff's federal claims pursuant to 42 U.S.C. §§ 1981 and 1983, and 28 U.S.C. §§ 1331 and 1343(a). DE 37 ¶ 2. It has supplemental jurisdiction over the state law claims, because those claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court may nonetheless decline to exercise supplemental jurisdiction over state law claims, even when the claims are sufficiently related, once the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). The Eleventh Circuit has advised that it is well within the discretion of the district courts to do so. *See, e.g.*, *Nolin*, 207 F.3d at 1258 (concluding that once the federal claims were resolved, "the district court should dismiss the state law claims," resolution of which would necessarily require a "careful analysis of Alabama law," so that the appellee could pursue those claims in state court).

Because the Court has granted summary judgment in favor of the Defendant on all federal counts (Counts II through V), which served as the basis for original federal court jurisdiction, the

---

[15] Because the Court finds that the Plaintiff has not brought forth sufficient evidence to show that a constitutional violation occurred, it need not address the "clearly established" prong of the qualified immunity defense in the context of these claims.

Court declines to exercise supplemental jurisdiction over the Plaintiff's state law claims. As such, these state law claims are dismissed without prejudice.

## V.      CONCLUSION

For the foregoing reasons, Defendant Nick DeGiovanni's Motion for Summary Judgment as to Counts II–V [DE 101] is **GRANTED** and Defendant Nick DeGiovanni's Motion to Strike Plaintiff's Unauthorized Sur-Reply [DE 119] is **DENIED**. The Clerk of the Court is directed to enter final judgment in favor of Defendant on Counts II–V. Because these claims are the only federal claims alleged, and the Court declines to exercise supplemental jurisdiction over the remaining state law claims in Counts I and VI, the claims in those Counts are **DISMISSED WITHOUT PREJUDICE** and the Clerk of Court is instructed to **CLOSE THIS CASE**. All pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this <u>10th</u> day of December, 2014.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record

23